**ORIGINAL**

# In the United States Court of Federal Claims

No. 14-985C
(Filed: March 10, 2015)

**FILED**

**MAR 1 0 2015**

U.S. COURT OF
FEDERAL CLAIMS

```
*****************************
KEITH L. KELLER,              *
                              *
            Plaintiff,        *   Motion to Dismiss; RCFC 12(b)(1); RCFC
                              *   12(b)(6); Military Pay; Request for
v.                            *   Reinstatement; Wrongful Discharge; Statute
                              *   of Limitations; Res Judicata; Claim
THE UNITED STATES,            *   Preclusion
                              *
            Defendant.        *
*****************************
```

Keith L. Keller, Pine Ridge, SD, pro se.

Jessica R. Toplin, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Plaintiff Keith L. Keller, M.D. contends that the Air Force Board for Correction of Military Records ("AFBCMR") arbitrarily and capriciously failed to recommend his reinstatement to active duty. Defendant moves to dismiss plaintiff's complaint, arguing that plaintiff's claim is barred by both the statute of limitations and the doctrine of res judicata. For the reasons set forth below, the court grants defendant's motion.

### I. BACKGROUND

Plaintiff entered the United States Air Force ("Air Force") on January 8, 1996, at the rank of major.[1] In both 1996 and 1997, plaintiff was considered, but not selected, for promotion to the rank of lieutenant colonel. Further, by April 1997, the Air Force had initiated procedures to

---

[1] A comprehensive factual and procedural history can be found in Keller v. United States, 113 Fed. Cl. 779 (2013), aff'd per curiam, Keller v. United States, 565 F. App'x 873 (Fed. Cir. 2014). Thus, the court limits its recitation of the facts and procedural history to what is necessary to resolve defendant's motion. The relevant information is derived from the complaint, the exhibits attached to the complaint, the exhibit attached to defendant's motion to dismiss, and the previous decisions of the United States Court of Federal Claims ("Court of Federal Claims") and the United States Court of Appeals for the Federal Circuit ("Federal Circuit").

discharge plaintiff for substandard performance. This latter circumstance resulted in plaintiff's honorable discharge from the Air Force on November 26, 1997.

Plaintiff challenged various aspects of his discharge before the AFBCMR, which ultimately recommended that the Air Force change the reason for plaintiff's discharge from "substandard performance" to "involuntary release; non-selection, permanent promotion," and constructively extend plaintiff's date of separation to June 30, 1998. Dissatisfied with the limited relief provided by the AFBCMR, plaintiff timely filed suit in this court on November 26, 2003. The court stayed its proceedings and remanded plaintiff's claims to the AFBCMR. Plaintiff filed a new application for relief with the AFBCMR in which he claimed, among other things, that he should have been considered for promotion by a Special Selection Board ("SSB"). In an October 12, 2004 decision, the AFBCMR recommended that plaintiff be considered for promotion by SSBs for 1996 and 1997, and, if he was not selected for promotion by either SSB, that he be considered for continuation on active duty by the 1997 SSB.

The Air Force convened SSBs for 1996 and 1997 in 2005, but neither SSB selected plaintiff for promotion. However, as reflected in a March 16, 2006 letter addressed to plaintiff's counsel, the 1997 SSB selected plaintiff for continuation. The Air Force specifically advised in its letter that plaintiff could, if he was eligible, request reinstatement to active duty by submitting an application to the AFBCMR. Not set forth in the letter were two other options available to plaintiff: agree to a continuation on active duty via constructive service or decline continuation altogether.

On May 31, 2006, plaintiff's counsel sent the AFBCMR a letter memorializing his understanding that if plaintiff accepted continuation "with re-entry into active duty," he would receive back pay and allowances. Counsel also requested additional information regarding the consequences of plaintiff accepting continuation. Of particular note, counsel was concerned with plaintiff's pay grade:

> Please advise me how the Air Force intends to treat Dr. Keller's advancement in pay grade. In accordance with Air Force Instruction 36-2501, 6 March 1998, Dr. Keller would have been eligible for subsequent promotion boards, reassignment, [temporary duty], schools, and training, as long as he completed the associated Active Duty Service Commitment before his mandatory retirement date or Date of Separation. As a continued officer, Dr. Keller would have had repeat opportunities for promotion to lieutenant colonel as early as November 1998 and as late as November 2001 . . . .

At the conclusion of his letter, counsel "petition[ed] for [plaintiff's] direct promotion to Lieutenant Colonel retroactive to November 2001, or in the alternative, [that] Dr. Keller receive Special Selection Boards for each year after 1997 for which he was eligible for promotion consideration." He also wrote: "Since the results of the Special Selection Boards are relevant to

[plaintiff's] decision on acceptance of continuation, we request these boards be convened prior to his return to active duty."

Plaintiff's counsel received a response to his letter from the Air Force on June 16, 2006. With respect to counsel's pay grade inquiry, the Air Force provided:

> The Officer Promotions Branch within the Air Force Personnel Center indicates that if Dr. Keller accepted continuation, it would only be for a 3-year period, taking his date of separation (DOS) to August 2001. He would have been eligible to meet the [Calendar Year ("CY")]98, CY99 and CY00 boards. If nonselected by all, he would have been considered for another 3 year continuation offer by the CY00 board and if offered and accepted, would have taken his DOS to 1 July 2004. He would then have been eligible to meet the CY01, CY02 and CY03 boards. If nonselected, he would have been considered for another 3 year continuation offer by the CY03 board and, if offered and accepted, would be given an August 2007 DOS. . . . Dr. Keller could thus request relief to reflect he accepted the 3-year continuation in order . . . to meet the CY98, CY99 and CY00 boards and if nonselected, [to] meet the CY00 continuation board. If selected for promotion, he could request reinstatement based on promotion. If nonselected, offered continuation and accepts, he'll have to do the same thing in order to meet the CY01, CY02 and CY03 boards.

The Air Force did not respond to counsel's petition for plaintiff's direct promotion to the rank of lieutenant colonel. Nevertheless, in a June 22, 2006 letter to the AFBCMR, counsel indicated that plaintiff had decided to accept continuation:

> Dr. Keller accepts continuation for the 3-year period ending August 2001. He requests Special Selection Boards for CY98, CY99, and CY00 at this time. If the CY98, CY99 or CY00 Boards do not select Dr. Keller for promotion, he will accept continuation for the 3-year period ending 1 July 2004 and request Special Selection Boards for CY01, CY02, and CY03.
>
> In the event he is selected for promotion to the grade of lieutenant colonel, he will request reinstatement based on promotion.

In other words, plaintiff chose to constructively serve on active duty from June 30, 1998, to August 2001.

It appears that upon receiving the letter from plaintiff's counsel, the AFBCMR sought the opinion of the Air Force Personnel Center regarding the final correction of plaintiff's records. In a July 5, 2006 letter, the Air Force Personnel Center recommended:

> Based on the applicant's acceptance of continuation . . . , his record should be corrected to reflect a date of separation (DOS) of 31 Jul 01. Based on this DOS, he is now eligible to meet the CY98A, CY99A and CY00A Lieutenant Colonel MC Central Selection Boards. If nonselected for promotion by these boards, he would again be considered for continuation by the CY00A Major Continuation Board and if selected he would be offered a DOS of 30 Jun 04. If the applicant accepted continuation, he would be eligible to meet the CY01A, CY02A and CY03A Lieutenant Colonel MC Selection Boards. If nonselected for promotion by these boards, he would again be considered for continuation by the CY03A Major Continuation Board and if selected he would be offered a DOS of 31 July 07. Based on this DOS, he would be eligible to meet the CY04A, CY05A and CY06A Lieutenant Colonel Selection Boards.
>
> . . . . Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice in regard to the applicant's request for direct promotion to the grade of lieutenant colonel. . . .
>
> . . . . We do not concur with returning the applicant to active duty with a DOS of 31 Jul 07. Although we can assume the applicant would have been selected for continuation and would have accepted, he would no longer be entitled to meet SSBs for the promotion board he could have eligible for as continuation is based on nonselection for promotion. Therefore, we recommend [the] applicant be scheduled for all applicable promotion boards and if nonselected, meet all continuation boards he would have been eligible for. If the applicant is either promoted or desires to accept continuation to a date in the future, [the] applicant should be given the opportunity to apply to return to active duty.

In a July 19, 2006 decision, the AFBCMR agreed with the Air Force Personnel Center's recommendations and adopted its rationale as the basis for its decision that because plaintiff was the victim of an error or injustice, his records should be corrected to reflect a separation date of July 31, 2001.

Nine days later, plaintiff's counsel sent the AFBCMR a letter in which he objected to the AFBCMR's adoption of the Air Force Personnel Center's recommendations. First, counsel noted that the AFBCMR adopted the recommendations without first soliciting comment from plaintiff. Second, counsel noted his understanding that contrary to the position taken by the Air Force Personnel Center, plaintiff would not have been obligated to be considered by continuation boards in 2000 and 2003 to remain on active duty; rather, it was his understanding, based on previous communications with the Air Force, that plaintiff would continue on active duty "unconditionally until he is either retired, or is promoted to the grade of lieutenant colonel." Counsel therefore requested that the AFBCMR amend its recommendation to reflect that plaintiff's records should include a specific notation that plaintiff's continuation on active duty would be unconditional. The AFBCMR responded to plaintiff's counsel's letter on August 15,

2006, remarking that because plaintiff's acceptance of continuation "set into motion the follow-on SSB continuation and promotion process," counsel's request was premature. The AFBCMR reiterated this sentiment in an October 17, 2006 letter to counsel.

Proceedings before the Court of Federal Claims remained stayed while the Air Force calculated, and then paid, the back pay and allowances owed to plaintiff as a result of his continuation on active duty via constructive service. After receiving payment, plaintiff filed an amended complaint, and the court lifted the stay. However, on December 21, 2009, plaintiff submitted another application to the AFBCMR, challenging various aspects of the process by which the Air Force conducted the 1998, 1999, and 2000 SSBs. As a result, the court once again stayed proceedings to allow the AFBCMR to consider plaintiff's claims. In an April 10, 2012 decision, the AFBCMR rejected plaintiff's claims in their entirety. In reaching its decision, the AFBCMR made the following three statements relevant to the instant lawsuit: (1) "[Plaintiff] was offered the opportunity to apply for reinstatement, but instead determined to accept continuation in order to proceed with further SSBs." (2) "[Plaintiff] was offered an opportunity to request reinstatement to active duty, but instead elected continuation and further SSB consideration." (3) "[Plaintiff] made a deliberate decision to choose continuation and further SSB consideration over reinstatement . . . ."

Plaintiff filed a second amended complaint on October 1, 2012, reiterating his objections to the process by which the 1998, 1999, and 2000 SSBs were conducted, and contending that the AFBCMR's approval of that process was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. He requested that the court set aside the AFBCMR's decision, compel the Air Force to correct his record to reflect that he received promotions from the rank of lieutenant colonel through the rank of general, compel the Air Force to correct his record to reflect that he was reinstated and credit him with back pay and allowances, award him attorney's fees and costs, and grant him any other relief deemed just and proper.

In response to the second amended complaint, defendant filed a motion to dismiss and the parties filed cross-motions for judgment on the administrative record. In a December 6, 2013 decision, the Court of Federal Claims granted defendant's motion to dismiss, holding that plaintiff's request for an order directing the Air Force to promote him through the rank of general failed to state a claim upon which it could grant relief. Then, with respect to the cross-motions for judgment on the administrative record, the court granted defendant's motion and denied plaintiff's cross-motion, concluding that the AFBCMR's decision upholding the process by which the 1998, 1999, and 2000 SSBs were conducted was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Based on these rulings, the court dismissed plaintiff's second amended complaint with prejudice and directed the entry of judgment in defendant's favor.

On the same day that the Court of Federal Claims dismissed his second amended complaint, plaintiff filed an application with the AFBCMR requesting that he be reinstated to active duty with a July 31, 2016 separation date, arguing that he had been improperly "denied [a]

return to active duty with a [separation date] of 31 Jul 07." He claimed that he discovered the Air Force's alleged error on March 16, 2006, when the 1997 SSB selected him for continuation. On February 27, 2014, the AFBCMR deemed plaintiff's application to be a request for reconsideration and then denied the request due to plaintiff's failure to support it with new, relevant evidence. Plaintiff responded to the AFBCMR that same day. In his letter, he contended that his application should not have been treated as a request for reconsideration, and that even if such a characterization was proper, he provided the required evidence, stating: "[T]he AFBCMR itself provided new relevant evidence . . . when it declared . . . an unchanging belief that Dr. Keller was eligible for reinstatement to active[ ]duty in 2006." The AFBCMR responded to plaintiff on March 18, 2014, reiterating the position that it advanced in its February 27, 2014 letter.

In the meantime, plaintiff, proceeding pro se, appealed the Court of Federal Claims' dismissal of his second amended complaint to the Federal Circuit. Plaintiff's primary contention on appeal was that the Court of Federal Claims made an erroneous statement of fact in its December 6, 2013 decision when it remarked that plaintiff's selection for continuation by the 1997 SSB provided plaintiff with three mutually exclusive options: applying for reinstatement to active duty, accepting continuation on active duty via constructive service, or rejecting continuation altogether. According to plaintiff, the court's statement implied that he had the choice to immediately return to active duty when, in fact, his only option was to continue on active duty constructively. This purported factual error, plaintiff contended, was prejudicial to him because it had negative consequences on many of his arguments before the court.

In a May 8, 2014 ruling, the Federal Circuit rejected plaintiff's contention. First, it held that there was no clear error in the Court of Federal Claims' finding that upon being selected for continuation, plaintiff had the option of seeking reinstatement to active duty. Second, it concluded that even if it had found clear error, the error would have been harmless because the Court of Federal Claims did not rely on the purportedly erroneous finding in dismissing plaintiff's second amended complaint. Finally, the Federal Circuit noted that plaintiff did not request a remedy for the alleged error that was within its authority to provide. Accordingly, the Federal Circuit affirmed the decision of the Court of Federal Claims.

Plaintiff, continuing to proceed pro se, filed his current lawsuit on October 14, 2014. In his complaint, plaintiff argues that the AFBCMR's July 19, 2006 decision was arbitrary and capricious because the AFBCMR adopted the Air Force Personnel Center's recommendations—denying him a direct promotion to the rank of lieutenant colonel and rejecting a separation date of July 31, 2007–rather than finding that plaintiff should be reinstated to active duty. According to plaintiff, the AFBCMR should have directed his reinstatement to active duty because it had previously determined that plaintiff was eligible for reinstatement. Indeed, plaintiff asserts, the AFBCMR revealed for the first time in its April 10, 2012 decision that it had always understood that plaintiff was eligible for an unconditional continuation on active duty. To remedy the AFBCMR's alleged error, plaintiff requests that the court set aside the AFBCMR's April 10, 2012, and March 18, 2014 decisions; compel the Air Force to correct his record to reflect

constructive reinstatement to active duty from August 1, 2001, until his actual reinstatement to active duty or placement in retirement status; and compel the Air Force to credit him with all required back pay and allowances.

On December 15, 2014, defendant moved to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC"). Briefing is complete and, because oral argument unnecessary, the court is prepared to rule.

## II. DISCUSSION

### A. Standard of Review

Defendant moves to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of jurisdiction and pursuant to RCFC 12(b)(6) for failure to state a claim upon which the court could grant relief. In ruling on a motion to dismiss, the court assumes that the allegations in the complaint are true and construes those allegations in the plaintiff's favor. Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). With respect to RCFC 12(b)(1) motions, the plaintiff bears the burden of proving, by a preponderance of the evidence, that the court possesses subject matter jurisdiction. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Although complaints filed by plaintiffs proceeding pro se are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520-21 (1972), a plaintiff proceeding pro se is not excused from meeting basic jurisdictional requirements, Henke, 60 F.3d at 799. If the court finds that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."). To survive a motion to dismiss under RCFC 12(b)(6), a plaintiff must include in its complaint "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp., 550 U.S. at 556). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp., 550 U.S. at 563. Indeed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982).

## B. The Court Lacks Jurisdiction to Entertain Plaintiff's Complaint

In its motion to dismiss, defendant first argues that plaintiff's complaint is barred by the statute of limitations. To fall within the court's jurisdiction, claims against the United States must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501 (2012); see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008) (providing that the limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to reach the merits of a claim). "A claim first accrues within the meaning of the statute of limitations when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1455 (Fed. Cir. 1997) (internal quotation marks omitted). In military discharge cases, the government's liability is fixed, and a plaintiff's entitlement to sue ripens, on the date of discharge. Martinez v. United States, 333 F.3d 1295, 1303-04 (Fed. Cir. 2003) (en banc).

The parties dispute the accrual date of plaintiff's claim. Defendant argues that because plaintiff's request for reinstatement to active duty and the resulting back pay and allowances constitutes relief for a claim of wrongful discharge, plaintiff's claim accrued on the date of his separation from the Air Force. Plaintiff, on the other hand, characterizes his claim as one for reinstatement to active duty, and contends that his claim has not yet accrued because his eligibility for reinstatement has never been explicitly stated by the Air Force. There are several flaws with plaintiff's position.

First, plaintiff's position is self-defeating; if plaintiff's characterization of his claim is accurate and his claim has not yet accrued, then plaintiff's claim would not be ripe for adjudication by this court. See Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985) (noting that a claim is not ripe for judicial review when it is contingent upon future events that may or may not occur). Second, plaintiff has not cited, and the court is not aware of, any case law in which a request for reinstatement to active duty was not treated as a remedy for wrongful discharge. To the contrary, former service members seek reinstatement to active duty when they believe that their discharge from the military was unlawful. See, e.g., Carmichael v. United States, 298 F.3d 1367, 1370-71 (Fed. Cir. 2002); Cornetta v. United States, 851 F.2d 1372, 1374 (Fed. Cir. 1988) (en banc); Klingenschmitt v. United States, 119 Fed. Cl. 163, 180 (2014). Third, the fact that plaintiff requests back pay and allowances dating back to his constructive separation from the Air Force supports the proposition that plaintiff believes that his discharge was improper. In sum, the court concludes that plaintiff's request for reinstatement to active duty and associated back pay and allowances is properly characterized as relief for a wrongful discharge claim, and that plaintiff's wrongful discharge claim accrued on the date of his separation from the Air Force.

The only issue that remains, then, is whether plaintiff's wrongful discharge claim accrued within the six-year statute of limitations. In defendant's view, plaintiff's claim accrued on the date of his initial, actual separation from the Air Force–November 26, 1997. It can also be

argued that plaintiff's claim accrued on the date of his constructive separation from the Air Force—July 31, 2001. In either case, plaintiff's claim would be time-barred because he did not file his complaint until October 14, 2014, well more than six years later.[2] Accordingly, the court must dismiss plaintiff's complaint for lack of jurisdiction.

### C. Plaintiff Has Failed to State a Claim Upon Which the Court Could Grant Relief

Even if plaintiff's claim for wrongful discharge was not time-barred, argues defendant, his claim would be barred by the doctrine of res judicata. Res judicata, as the term is commonly used, encompasses the related concepts of claim preclusion and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar." Migra, 465 U.S. at 77 n.1. In contrast, "[i]ssue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel." Id. (citation omitted). "By 'preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" Taylor, 553 U.S. at 892 (quoting Montana v. United States, 440 U.S. 147, 153-54 (1979)).

In this case, defendant invokes the doctrine of claim preclusion. "Claim preclusion applies when '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" Phillips/May Corp. v. United States, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (quoting Ammex, Inc. v. United States, 334 F.3d 1052, 1055 (Fed. Cir. 2003)); see also Nevada v. United States, 463 U.S. 110, 129-30 (1983) ("[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" (quoting Cromwell v. Cnty. of Sac, 94 U.S. 351, 352 (1876))); Do-Well Mach. Shop, Inc. v. United States, 870 F.2d

---

[2] To the extent that plaintiff contends that his wrongful discharge claim accrued on July 19, 2006—the date that the AFBCMR recommended that his records be corrected to show a continuation on active duty via constructive service rather than a reinstatement to active duty—he is incorrect. For one, "a plaintiff's invocation of a permissive administrative remedy," such as seeking relief from a military correction board, "does not prevent the accrual of the plaintiff's cause of action, nor does it toll the statute of limitations pending the exhaustion of that administrative remedy." Martinez, 333 F.3d at 1304. In addition, the AFBCMR issued its decision more than six years before plaintiff filed his complaint.

637, 640 (Fed. Cir. 1989) (noting that while a "dismissal on the merits carries res judicata effect," a "dismissal for want of jurisdiction does not").

There can be no dispute that the parties in this case are identical to the parties in the lawsuit filed by plaintiff in 2003, or that the 2003 lawsuit resulted in a judgment on the merits. Thus, the only question to be resolved is whether plaintiff's current claim "is based on the same set of transactional facts" as the claims he raised in his earlier lawsuit. "[T]he question of whether two claims involve the same set of transactional facts is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Phillips/May Corp., 524 F.3d at 1271 (quoting Restatement (Second) Judgments § 24(2) (1982)); see also Ammex, Inc., 334 F.3d at 1056 (noting that "courts have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same factual allegations'").

In his current complaint, plaintiff alleges that he was improperly separated from the Air Force, contending in particular that the AFBCMR, in its July 19, 2006 decision, should not have adopted the recommendation of the Air Force Personnel Center over its own view that plaintiff was eligible for reinstatement to active duty. He therefore seeks reinstatement to active duty and the resulting back pay and allowances. In the second amended complaint that he filed in the 2003 lawsuit, plaintiff alleged that he was improperly separated from the Air Force due to deficiencies in the process by which the Air Force conducted the 1998, 1999, and 2000 SSBs, and that the AFBCMR, in its April 10, 2012 decision, refused to correct his records to cure those deficiencies. He therefore sought, among other relief, reinstatement to active duty and the resulting back pay and allowances.

The allegations in both the current complaint, filed on October 14, 2014, and the second amended complaint from the 2003 case, filed on October 1, 2012, are drawn from the same factual circumstances: plaintiff's separation from the Air Force in 1997; the AFBCMR's initial failure to grant plaintiff any relief beyond correcting the date of, and reason for, his separation from the Air Force; the AFBCMR's subsequent recommendation that plaintiff be considered for promotion by the 1996 and 1997 SSBs; the 1997 SSB's selection of plaintiff for continuation and suggestion that plaintiff may be able to apply for reinstatement to active duty; the correspondence between plaintiff's counsel and the AFBCMR regarding plaintiff's options for continuing on active duty; plaintiff's decision to request continuation on active duty via constructive service; the AFBCMR's July 19, 2006 decision memorializing plaintiff's choice and adopting the recommendations of the Air Force Personnel Center that plaintiff be considered for promotion by the 1998, 1999, and 2000 SSBs, not be directly promoted to the rank of lieutenant colonel, and not be reinstated to active duty with a separation date of July 31, 2007; the objections raised by plaintiff's counsel to the AFBCMR's decision and the AFBCMR's responses to those objections; plaintiff's nonselection for promotion or continuation by the 1998, 1999, and 2000 SSBs, leading to a constructive separation date of July 31, 2001; plaintiff's challenge to the process by which

the three most recent SSBs were conducted; and the rejection of plaintiff's challenge by the AFBCMR on April 10, 2012. Further, in both this case and the 2003 case, the relief requested by plaintiff is the same: reinstatement to active duty and the associated back pay and allowances. And, in its decision affirming the ruling of the Court of Federal Claims in the 2003 case, the Federal Circuit specifically addressed whether plaintiff had the opportunity to apply for reinstatement to active duty after he was selected for continuation.

In sum, plaintiff's current claim for wrongful discharge is based on the same transactional facts upon which he based the claims that he articulated in the second amended complaint filed in the 2003 case. Thus, all three elements of claim preclusion are satisfied. Accordingly, even if plaintiff's complaint was timely filed, it would have been barred by the doctrine of res judicata.

### III. CONCLUSION

As set forth above, because plaintiff's claim for wrongful discharge is barred by the statute of limitations, the court **GRANTS** defendant's motion to dismiss and **DISMISSES** plaintiff's complaint for lack of jurisdiction. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge